**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

**DAVID PRICE**                                                                                          **PLAINTIFF**

v.                                               **1:08CV00019 BD**

**MICHAEL J. ASTRUE,**
**Commissioner, Social**
**Security Administration,**                                                          **DEFENDANT**

**MEMORANDUM AND ORDER**

Plaintiff, David Price, has appealed the final decision of the Commissioner of the Social Security Administration to deny his claim for Supplemental Security Income (SSI), based on disability. Both parties have submitted appeal briefs and the case is ready for decision.[1]

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); see also, 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, the Court must consider evidence

---

[1]The parties have consented to the jurisdiction of the Magistrate Judge. (Docket #6)

that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382(a)(3)(A). A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382(a)(C)(I).

Plaintiff alleged that he was limited in his ability to work by his back and knees, headaches, bipolar disorder, and by his feet. (Tr. 69) The Commissioner found that Plaintiff was not disabled within the meaning of the Social Security Act. The only issue before this Court is whether the Commissioner's decision that Plaintiff was not disabled within the meaning of the Act is supported by substantial record evidence.

After conducting an administrative hearing at which Plaintiff, his wife and a vocational expert testified, the Administrative Law Judge ("ALJ") concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act at any time through October 20, 2006, the date of his decision. (Tr. 24-25) On March 21, 2008, the Appeals Council received and considered additional evidence, but denied

Plaintiff's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 5-8) Plaintiff subsequently filed a complaint initiating this appeal. (Docket #2) After considering the record as a whole, the Court finds that the decision of the Commissioner is supported by substantial evidence.

Plaintiff was 46 years old at the time of the hearing. (Tr. 424, 451) He had completed the eleventh grade (Tr. 208, 424, 451) and had past relevant work as a machine feeder. (Tr. 23, 437-38, 452)

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process. The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i) (2006). If the claimant is, benefits are denied, regardless of medical condition, age, education or work experience. *Id*. at § 416.920(b).

Step 2 involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement. *Id*. at § 416.920(a)(4)(ii). If not, benefits are denied. *Id*. A "severe" impairment significantly limits a claimant's ability to perform basic work activities. *Id*. at § 416.920(c).

Step 3 involves a determination of whether the severe impairments meet or equal a listed impairment. *Id*., § 416.920(a)(4)(iii). If so, and the duration requirement is met, benefits are awarded. *Id*.

If the claimant does not meet or equal a Listing, then a residual functional capacity assessment is made. *Id.*, § 416.920(a)(4). This residual functional capacity assessment is used at Steps 4 and 5. *Id.*

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity to perform past relevant work. *Id.*, § 416.920(a)(4)(iv). If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.*, § 416.920(a)(4)(v). If so, benefits are denied; if not, benefits are awarded. *Id.*

The ALJ found that Plaintiff had not engaged in substantial gainful activity since January of 2002, the last date he reported working.[2] (Tr. 20) He found Plaintiff had "severe" impairments, including back pain, hypertension, visual impairment, asthma, dysthymia, adjustment disorder, mood disorder and coronary artery disease. *Id.* He found Plaintiff did not have an impairment or combination of impairments that met or equaled a Listing. *Id.* He judged that Plaintiff's subjective allegations were not entirely credible. (Tr. 23)

The ALJ found that Plaintiff retained the residual functional capacity for less than a full range of light work. (Tr. 21) He determined that Plaintiff was unable to perform his past relevant work. (Tr. 23) Based on the testimony of a vocational expert witness in

---

[2] The ALJ made an inconsistent statement later in his opinion, finding that Plaintiff had engaged in substantial gainful activity since his alleged onset date. (Tr. 23)

response to a hypothetical question, the ALJ found that there were a significant number of jobs in the economy that Plaintiff could perform, notwithstanding his limitations, for example, bottle packer and building cleaner. (Tr. 24) Thus, the ALJ concluded that Plaintiff was not disabled. *Id*.

Plaintiff argues that the ALJ's credibility analysis was flawed and, therefore, the resulting hypothetical question to the vocational expert was as well. (Br. 15-22) The ALJ considered Plaintiff's subjective complaints in light of *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984).[3] (Tr. 22-23)

The absence of an objective medical basis supporting the severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

    1. the claimant's daily activities;

    2. the duration, frequency and intensity of the pain;

    3. precipitating and aggravating factors;

    4. dosage, effectiveness and side effects of      medication;

    5. functional restrictions.

---

[3]The ALJ also cited Social Security Ruling 96-7p. (Tr. 22) That Ruling tracks *Polaski* and 20 C.F.R. § 416.929(c)(3), and elaborates on them.

The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole. *Polaski v. Heckler*, 739 F.2d at 1322 (emphasis in original).

There is little objective support in the record for Plaintiff's claim of disability. No evaluations before the ALJ showed medical conditions that were disabling. Furthermore, inconsistencies between the medical evidence and Plaintiff's subjective complaints gave reason to discount those complaints. *Richmond v. Shalala*, 23 F.3d 1141, 1443 (8th Cir. 1994).

Given the inconsistencies in Plaintiff's statements, the lack of medical evidence in support of Plaintiff's allegations during the relevant period, the lack of medical treatment for significant periods of time, Plaintiff's daily activities, his poor work record, his functional capabilities and the lack of restriction placed on Plaintiff by any physician, the ALJ could rightly discount Plaintiff's subjective complaints. See, *e.g.*, *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (holding that ALJ may discount subjective complaints if there are inconsistencies in the record as a whole); *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (holding that ALJ may discount complaints inconsistent with the evidence as a whole); *Dodson v. Chater*, 101 F.3d 533, 534 (8th Cir. 1996) (holding that after full consideration of all evidence relating to subjective complaints, ALJ may discount complaints if there are inconsistencies in evidence as a whole).

Charles M. Spellman, Ph.D., evaluated Plaintiff in August, 2004. (Tr. 208-10) Dr. Spellman wrote:

> He showed me a print[]out of his work history, which was well organized and documented. He has always worked since he was 13 when he washed dishes at the country club. He has always kept his jobs until they played out or he found a better one and he said his work history has been good up until a couple of years ago when he lost his factory job.

(Tr. 209) He concluded, "Psychological problems are not the cause of this man's difficulties." (Tr. 210)

However, Plaintiff testified:

> A .... I just blow off the handle. I just can't – and it's been that way for years.
>
> Q  For years?
>
> A  For years.
>
> Q  Has that affected your work history? Have you lost several jobs –
>
> A  Yes, sir.
>
> Q – because of that?
>
> A  Yes, sir. I'm not stable. No one knows when I'm going to blow up.

(Tr. 440)

Apparently, Plaintiff did not have enough quarters of coverage to qualify for Disability Insurance benefits, because he applied only for SSI. A fully insured worker who has at least 20 quarters of coverage during the 40 quarter period ending in the quarter

in which he becomes disabled meets the disability insured status requirement. 42 U.S.C. § 423(c)(1)(B)(i).

Both Plaintiff and his wife testified that he had used cocaine, but only once. Plaintiff was questioned by his attorney:

> Q: Okay. There's some notations here. Let me ask you about this: When was the last time you used coke?
>
> A: Just about a little over – I'd say a little over – just about a – over – a little over a year.[4] And it wasn't that, that, that often. That's why I wasn't – I was at that party, and like I explained – had explained to them. And Dr. McKee explained to me that, that that's a killer, but that was just that one instance.
>
> Q: Do you think you'd have been disabled during any of this time even if you hadn't been using cocaine?
>
> A: Yes, sir. I mean, I had no problem with drugs, period.

(Tr. 440-41)

The attorney then questioned Plaintiff's wife:

> Q: Okay. David talked about using cocaine a little over a year ago at this party that he went to.
>
> A: Uh-huh.
>
> Q: Do you know of any other times that he has used any kind of illegal drugs —
>
> A: No.
>
> Q: – since you've been with him?

---

[4]The hearing was August 7, 2006. (Tr. 421)

    A: No.

    Q: Was this an oddity then, that he did this at the party?

    A: Yes.

(Tr. 444)

    REEXAMINATION OF CLAIMANT BY ATTORNEY:

    Q: David, first of all, and I want you to be honest about it, have you ever taken illegal drugs other than that one time —

    A: No.

    Q: – when you had?

    A: No, sir. No, sir.

    Q: What about marijuana?

    A: Well, I mean, when I was in the military, I mean, yeah, we smoked a little pot in the military, but I'm not a big fan of any drug now, because that's been so long ago, and I have so many problems. . . . .

(Tr. 445)

A Newport Hospital & Clinic summary from April 18-19, 2003,[5] noted, "He has in the past been known to use street drugs." (Tr. 127) A Harris Hospital consultation report dated October 24, 2003, indicated Plaintiff drank alcohol occasionally, and his drug screen was positive for cocaine. (Tr. 147) Physical examination revealed extremities without weakness; Plaintiff had been in a fight with three or four men. *Id*. A Harris

---

[5]Plaintiff alleged an onset date of July 1, 2002. (Tr. 66) This hospital record indicated that he was working for Delta Construction in Jonesboro. (Tr. 127)

Hospital emergency room note from June 9, 2004, read, "Patient drinks alcohol on a daily basis and occasional cocaine usage." (Tr. 176)(Abbreviations spelled out)  An August 6, 2004 record from Baptist Health Medical Center indicated a positive toxicological screen for cocaine, but Plaintiff denied illicit drugs use.  (Tr. 197)  Contemporary records indicated urine drug screen positive for cocaine and benzodiazepams.  (Tr. 200)  Musculoskeletal was "normal."  *Id*.  "The patient uses cocaine on a fairly regular basis."  (Tr. 199)

> He reports having done marijuana very frequently, up until June of this year.  He also reports having smoked crack cocaine in the past.  He states that he was at a party last night where people were smoking crack cocaine to myself, however he told Dr. De.Bruyn that one of his brothers was smoking crack cocaine when he drove him down here to Little Rock, Arkansas today, so if he has any crack cocaine in his system it was due to "passive exposure."

(Tr. 194)

Plaintiff was also inconsistent in his reports of smoking.  He reported smoking one pack per day in November, 2002.  (Tr. 277)  In April of 2003, he claimed he did not smoke.  (Tr. 127)  By October, 2003, he was smoking one-half pack per day.  (Tr. 147)  He claimed that he quit smoking in January, 2004.  (Tr. 79)  In August, 2004, he indicated that he had smoked three packs per day until June, 2004, but was then smoking one-half pack per day.  (Tr. 194)  In June, 2006, he indicated that he smoked one pack per day.  (Tr. 326)

The ALJ's credibility analysis was proper.  He made express credibility findings and gave multiple valid reasons for discrediting Plaintiff's subjective complaints.  *E.g.*,

*Shelton v. Chater*, 87 F.3d 992, 995 (8th Cir. 1996); *Reynolds v. Chater*, 82 F.3d at 258; *Hall v. Chater*, 62 F.3d 220, 224 (8th Cir. 1995). The ALJ's credibility findings are entitled to deference as long as they are supported by good reasons and substantial evidence. *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).

Plaintiff also contends that the Appeals Council failed to consider the additional evidence submitted to them. (Br. 22) That point is not well taken. In the Notice of Appeals Council Action, it states, "In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council." (Tr. 5)

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ. *E.g.*, *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing and the medical and other evidence. There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. at 401; see also *Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Commissioner"s decision is not based on legal error.

Accordingly, the final determination of the Commissioner is affirmed, and Plaintiff's complaint is hereby DISMISSED, with prejudice, this 13th day of August, 2009.

_____
UNITED STATES MAGISTRATE JUDGE